Pufahl v. O'Malley appeal number 24-1545 and Mr. Moran I think is appearing in the video Mr. Moran can you hear us okay? Yes, your honor. Okay, Miss Koontz is here so you can begin whenever you'd like. Yes, your honor. John Moran on behalf of the appellant Alice Pufahl. Your honor, I'm here today to argue that the ALJ's decision denying Miss Pufahl's disability claim is not supported by substantial evidence and contains several legal errors that require remand. There are key areas where the ALJ's decision falls short. First, there was an improper evaluation of the treating physician's opinions. There was a flawed assessment of the claimant's residual functional capacity. There was inadequate consideration of the claimant's mental impairments and finally the ALJ failed to articulate a basis for finding that Miss Pufahl's subjective complaints regarding her impairments were not supported. First, regarding the treating physician opinions. A treating physician's opinion on the nature and severity of a medical condition is entitled to controlling weight if it is well supported by medical findings and is consistent with other evidence in the record. The ALJ must decide the weight of a treating physician's non-controlling opinion by considering the treatment relationship that whether the must consider the treatment relationship the nature and extent and the opinions consistency with the other evidence in the record. What the ALJ must also consider the explanatory support for the opinion and any specialty of the treating physician. With respect to the opinion of Dr. Norenschild, first I would note that Dr. Norenschild was the claimant's longtime treating family doctor. The ALJ also failed to properly weigh the opinion of Dr. Reschel, the longtime treating neurologist using the correct legal standards. With respect to Dr. Norenschild, he specified that his opinions were based on fibromyalgia with fatigue, chronic daily diffuse pain in the muscles, joints, and lower back which worsened with activity and was aggravated by stress. Dr. Cornchild's opinion was based on fibromyalgia, not her spinal impairment. Fibromyalgia cannot be diagnosed with findings such as range of motion, muscle strength, or MRI results. These findings are immaterial to diagnosing and treating the pain caused by the fibromyalgia. In this case, the ALJ cited two MRI results, muscle strength, and range of motion in finding that the claimant had only moderate limitations with respect to her function. The ALJ did not cite any objective findings associated with the fibromyalgia that contradict the treating doctor's assessment of the limitations. As noted in Social Security Regulation 12-2P, the findings cited by the ALJ are relevant, findings cited by the ALJ that are irrelevant in diagnosing fibromyalgia. The ALJ failed to cite any relevant objective findings. It's crucial to note that... Is it possible to have such objective evidence that's inconsistent with the fibromyalgia diagnosis and evaluations? Your Honor, that's a good question. I don't know if there is... I'm not a The reason I ask is the logic of your position seems to say that if a treating physician, at least under the old regime that we're under here, if a treating physician testifies in essence that the patient has disabling fibromyalgia, that's controlling. That's the end of the story. I don't think that's what I'm saying, Your Honor. I think I'm saying that in this case, a rheumatologist diagnosed fibromyalgia. The long-time treating doctor treated the fibromyalgia. The rheumatologist and the treating doctor prescribed significant medications because in their relevant expertise over a period of many years, they believed that the claimant suffered from fibromyalgia. This was... This determination was made based on the findings by the rheumatologist and the treating doctor that the claimant had extensive tender points throughout the back and other areas of her body consistent with Social Security's regulations. The ALJ made a finding that fibromyalgia in this case was a severe impairment, recognizing that that is a condition that the claimant suffered from. The treating doctor was the person in position over the period of many years to see the patient, to evaluate her. The treating doctor clearly believed, based on those objective findings that he found, that the claimant suffered from this condition and as a for that condition and was in the best position as the treating doctor, as the long-time treating doctor, to evaluate how that condition affected her residual functional capacity. Excuse me, but that sounds like you're telling us that if in fact the treating physician diagnoses and treats fibromyalgia and says the impairment is severe enough to prevent what amounts to full-time employment, that's conclusive because there would be nothing other than perhaps activities of daily living that would contradict that. Well, I think what could happen is the ALJ could ask for an independent opinion by an examining doctor or have a doctor appear at hearing to testify as to the significance of the record in determining the claimant's residual functional capacity. Absent a treating expert providing an opinion to the contrary, the opinion of the ALJ as to the residual functional capacity is not supported by substantial evidence because there's no medical opinion that the record as it stands would not or could not produce the findings of the of the long-time treating doctor and in that situation I think that the treating doctor has to be given controlling weight. I think that the regulations, the old regulations that do apply to this case require that. I would also note that we have a similar issue with respect to the claimants long-time treating neurologist. Again, we have a another expert seeing the claimant within his specialty as a neurologist. He makes an evaluation of the claimant. He hears her complaints. He determines that her complaints regarding her migraine headaches, the nausea, vomiting, photosensitivity that he documented were consistent. Problems with cognition and memory that those findings based on his evaluation and his expertise and as an expert in this field and the appropriate person to treat this claimant for this condition, it was his opinion that the claimant's residual functional capacity would cause substantial limitations in her ability to function. He was of the opinion that she would have significant limitations. Mr. Moran, do you want to save some time for rebuttal? Yes, Your Honor. Okay, Ms. Kuntz. Good morning, Your Honors. May it please the Court, Elaine Kuntz on behalf of the Commissioner of Social Security. The ALJ in this case provided detailed support for his findings throughout the decision. Ms. Pupil has not pointed to a single piece of evidence that the ALJ overlooked or mischaracterized, nor has she highlighted any legal errors in the decision that merit remand. What she has done is a request for this court to reweigh the evidence and to second guess the ALJ's well-supported findings, but as this court has made clear, mere disagreement with the ALJ's decision is not enough. So beginning with the medical opinions from her treating providers, the ALJ provided several good reasons for the weight that he gave to all of the medical opinions, and that's all that was required of him under the applicable regulations and this court's precedent. So regarding the opinions from her neurologist and her primary care provider, the ALJ explained that both merited only little weight because neither provider offered support for these extreme opinions, and the support was not apparent in their treatment notes. The ALJ also found the opinions inconsistent with significant evidence elsewhere in the record, including normal physical exams where Ms. Pupil demonstrated full strength, unremarkable gait, and full range of motion, among other things. How are those observations inconsistent with the fibromyalgia symptoms and the There's no question that fibromyalgia is only diagnosable from these tender points, and nobody is disputing that Ms. Pupil experienced pain caused by fibromyalgia, but after there is a diagnosis of fibromyalgia, the question becomes, what are the functional effects that this impairment has on the claimant? So that's where the observations come into play here. So we have her primary care physician, her rheumatologist, she's coming in for these appointments and she's reporting disabling chronic pain, and they're observing her to be in no visible distress. She has full strength, full range of motion. That indicates to the ALJ that while she may be experiencing pain, it's not pain that prevents her from performing some limited range of time work. And regarding her migraines, it is significant here that if you look over the longitudinal record, yes, she did report some increased migraine symptoms and some exacerbations, and right around the time that Dr. Reschel offered his opinion, she said she was having two to three severe migraines per week. But with minor changes in medication treatment, those migraines were significantly improved. And Ms. Pufill herself even said that if she took an over-the-counter medication immediately, Benadryl or Ibuprofen, that effectively managed the migraines. So again, she's not, she herself is reporting that these migraines are not occurring with such frequency that they would be work-perclusive. And certainly none of the ALJ's reliance on that evidence was not improper, and it provided the necessary good reasons for discounting those opinions. The ALJ also, separate from the physical opinions, offered several good reasons for discounting the opinions of her therapist and treating psychiatrist. So here, the ALJ considered the overwhelmingly normal mental status exams throughout the record. Despite any reports of symptoms that she was making, she presented with full orientation, logical thought processes, no loose associations. She complained of short-term memory loss and difficulty concentrating, but the medical record did not reflect any significant memory or intelligence deficits. And though she continued to report anxiety and panic attacks related to social interactions, her treating providers observed a bright effect and an ability to easily engage in conversation. So we can see with the medical opinions and also ultimately with the ALJ's residual functional capacity finding, despite any of Ms. Pufill's reports, the ALJ found specific medical evidence throughout the record, and he tied that evidence directly to his residual functional capacity findings. So if the court has no... Could you help me out on one thing, Ms. Koons? I'm looking at the report of Dr. Rattan, who I believe was one of the record reviewers for the state agency, and on the ability to complete a normal workday and workweek without interruptions from psychologically-based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, his conclusion was moderately limited. Can you just walk me through the residual functional capacity finding to show where that's accommodated? Sure. Or addressed, anyway. Yeah, so the administrative law judge found that given her moderate limitations in concentrating, persisting, or maintaining pace, she was able to perform only simple routine tasks in two-hour increments. So it's important to remember here what a moderate limitation is. So a moderate limitation means that an individual's abilities are fair, which as this court has found, that does not mean they're bad or inadequate, and it does not mean that a claimant is unable to perform that task. It just means there are some limitations in performing that task. So whereas someone without any limitations in concentrating, persisting, or maintaining pace might be able to perform detailed, complicated tasks for four hours at a time, recognizing that her symptoms may interfere with her ability to do that, the ALJ limited her to simple routine tasks in two-hour increments, giving her these breaks and allowing her to focus only on routine, unskilled work. And significantly, Ms. Pufall has not pointed to any objective evidence which would indicate that she cannot perform this work, and it's her responsibility to do so. The court said in Gadadis, it is fatal if the claimant fails to show how her medically determinable impairments caused any limitations beyond those that the ALJ found. And she has not pointed to any evidence indicating she cannot perform unskilled work for no more than two on our brief and ask that you affirm the ALJ's decision. Okay, thank you. Okay, Mr. Moran. Yes, Your Honor. I would just note that all of the claimant's treating doctors indicated that she would have at least some limitations in concentration, persistence, and pace, which is evidence that she would not be able to sustain activity over the work day. The ALJ did not adequately address that in the RFC, and I would point your attention to the recent decision of Keck versus O'Malley, wherein this court reaffirmed the principle that an ALJ's assessment and hypothetical to a VE must incorporate all of the claimant's limitations supported by the record, including limitations in concentration, persistence, and pace. In this case, the ALJ said that he limits the claimant to concentrating for two-hour segments. Now, I don't know what that means. Does that mean that she has four two-hour segments over the course of an eight-hour day? What type of break is she entitled to? I don't think that that RFC in any way accommodates that limitation, and it makes no accommodation for the claimant's ability to show up for work every day, which is part of what the state agency consultant opined, that she would have moderate limitations in maintaining work on a regular basis. So I think that the record, the medical record, shows that she would not be able to do that, and it wasn't fairly accommodated by the ALJ RFC, residual functional capacity. Okay, thank you Mr. Moran. Thank you to both counsel in the case that we've taken under advisement.